IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WINIFRED MIDKIFF, *et al.*, on )
behalf of themselves and all others )
similarly situated, )
 )
        Plaintiffs, )
 )
v. )   Civil Action No. 3:22-cv-417–HEH
 )
THE ANTHEM COMPANIES, INC., )
*et al.*, )
 )
        Defendants. )

## MEMORANDUM OPINION
(Granting Motion to Certify Class)

THIS MATTER is before the Court on Plaintiffs Winifred Midkiff's ("Midkiff") and Ardaith Brown's ("Brown") (collectively, "Plaintiffs") Motion for Rule 23 Class Certification (the "Motion," ECF No. 101), filed on November 30, 2023. The Court heard argument on March 18, 2024. (Minute Entry at 1, ECF No. 175.) Plaintiff Brown brings a Virginia Overtime Wage Act ("VOWA") claim and requests that the Court certify a class of Nurse Medical Management ("NMM") reviewers who worked for Defendants The Anthem Companies, Inc., Anthem Health Plans of Virginia, Inc., and AMERIGROUP Corporation (collectively, "Defendants" or "Anthem") in Virginia from

July 1, 2021, to the present. (Second Am. Compl. at 14, ECF No. 85; Mem. in Supp. at 1–2, ECF No. 102.)[1] For the reasons stated herein, the Motion will be granted.

## I. BACKGROUND

### A. Factual Background

Plaintiffs and the putative class work or worked for Defendants in Virginia as utilization reviewers in one of three positions: NMM I, NMM II, and NMM Senior. (Second Am. Compl. ¶¶ 4, 74; Mem. in Supp. at 5, 18.) Brown worked as an NMM I from May 29, 2018, to November 19, 2022. (Second Am. Compl. ¶ 54.)[2] Plaintiffs allege that the primary responsibility of NMMs was "to perform utilization reviews, also called 'medical necessity' reviews, of authorization requests submitted by healthcare providers." (Mem. in Supp. at 5.) These reviews involved evaluating requests submitted by healthcare providers and determining whether they met certain criteria. (Approval – Initial Inpatient Review Quick Reference Guide at 3, ECF No. 102-26; Robinson Dep. at 19:9–19, ECF No. 102-5.) The National Committee for Quality Assurance ("NCQA") sets uniform standards that are applicable to the reviews and Defendants implemented certain uniform policies to meet them, as detailed below. (*See* NCQA 2020 Utilization Mgmt. Standards and Elements, ECF No. 102-39.)

---

[1] Plaintiffs also bring a Fair Labor Standards Act ("FLSA") claim, which the Court has conditionally certified. (Second Am. Compl. ¶¶ 83–89; Order at 1–2, ECF No. 44.) This claim is not at issue here.

[2] Details related to Midkiff's employment are omitted because Midkiff's employment with Defendants ended in July 2017, prior to VOWA's enaction. (Mem. in Supp. at 2 n.1.) Thus, she is not representative of the proposed class. (*Id.*)

The NMMs followed a step-by-step process to determine whether the criteria were met, and, if they were, the NMMs could approve the request. (Williams Dep. at 29:22–25, ECF No. 102-7; Gresham Dep. at 19:22–22:23, ECF No. 102-16; *see generally* Approval – Initial Inpatient Review Quick Reference Guide.) If the criteria were not met, the reviewers were required to send the request to a Medical Director for a final determination. (Approval – Initial Inpatient Review Quick Reference Guide at 3.) The NMMs were not permitted to deny any authorizations themselves. (Utilization Mgmt. Operational Guideline at 1, ECF No. 102-29.) NMMs of any level could also act as "preceptors" available to answer questions from NMM trainees. (March 18, 2024 Tr. at 90:16, 91:17–19, ECF No. 179.) Defendants required NMM Is, NMM IIs, and NMM Seniors to have nursing licenses, but some employees performing medical necessity reviews were not licensed nurses. (Brown Dep. at 55:4–7, ECF No. 102-17; Defs.' Resp. to Pls.' Req. for Admis. No. 5, ECF No. 102-3.) Pursuant to the NCQA's uniform utilization management standards, utilization reviewers are not required to be Registered Nurses (RNs). (NCQA 2020 Utilization Mgmt. Standards and Elements at 19.)

Valerie Smith ("Smith")—a member of the putative class who worked as an NMM I, an NMM II, and an NMM Senior—testified that her job duties "didn't change" between these roles. (Mar. 18, 2024 Tr. at 90:7–14.) In each of these roles, Smith's primary responsibility was to "review clinical information and match it against criteria." (*Id.* at 91:23–24.) Smith also testified that her level of responsibility did not change as she moved between roles. (*Id.* at 90:19–24.)

3

Plaintiffs allege that Brown and the putative class routinely worked over forty (40) hours per week to complete assigned medical necessity reviews. (Second Am. Compl. ¶ 5.) However, Brown and the other nurses did not receive overtime compensation because Defendants classified them as exempt under the FLSA's professional and administrative exemptions. (Mem. in Supp. at 18–20.)

### b. Procedural History

Midkiff filed her original Complaint bringing an FLSA collective action claim against Defendants on June 3, 2022. (*See* Compl., ECF No. 1.) Midkiff filed an Amended Complaint (ECF No. 19) on August 24, 2022, and this Court conditionally certified the FLSA collective on November 10, 2022. (Order at 1–2.) Plaintiffs filed the Second Amended Complaint, which included Brown as a named party and added the VOWA claim, on July 27, 2023. (Second Am. Compl. ¶¶ 1–3.) Plaintiffs moved to certify the VOWA class on November 30, 2023. (Mot. at 1.) Based on the similar role shared by NMMs and the similar alleged treatment of NMMs by Defendants, Brown seeks to certify the following class:

> Any individual who: (1) worked/works in Virginia for Anthem, Inc. (or one of its subsidiaries) in the Nurse Medical Management I, II, and/or Senior job title; (2) was/is paid a salary, (3) was/is treated as exempt from overtime laws, (4) worked/works over forty (40) hours during any week, and (5) was/is primarily responsible for performing medical necessity reviews at any time since July 1, 2021.

(Mem. in Supp. at 18.) Brown contends that this class, with her as class representative, satisfies the requirements of Federal Rule of Civil Procedure 23. (*Id.* at 2.)

4

## II. APPLICABLE LAW

Class certification is governed by Rule 23. When determining whether class certification is permissible, the party seeking class certification must first show that it has satisfied certain threshold requirements, including all four (4) of Rule 23(a)'s requirements. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). A district court may only certify a class if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED R. CIV. P. 23(a)(1)–(4). The Fourth Circuit also imposes a threshold ascertainability requirement for class certification: "[a] class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 206 (4th Cir. 2024) (quoting *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)). Assuming the threshold requirements have been satisfied, the proponent must further demonstrate that the claims fall into at least one of the three (3) categories of cases appropriate for class certification enumerated in Rule 23(b). FED R. CIV. P. 23(b); *EQT Prod.* 764 F.3d at 357.

"A district court has broad discretion in deciding whether to certify a class." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006) (quoting *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001)). Furthermore, district courts should construe Rule 23 liberally, rather than restrictively. *Gunnells v. Healthplan*

5

*Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003). Within this relaxed standard, the Supreme Court has reinforced the principle that trial courts should conduct a "rigorous analysis" to ensure that the prerequisites of Rule 23 have been satisfied. *Dukes*, 564 U.S. at 350–51. This "rigorous analysis" frequently "entail[s] some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Id.* at 351. At the same time, "[t]he likelihood of the plaintiffs' success on the merits . . . is not relevant to the issue of whether certification is proper." *Thorn*, 445 F.3d at 319. Consequently, "the Court will inquire no further into the merits than is necessary to determine the likely contours of [an] action should it proceed on a representative basis." *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 211 (E.D. Va. 2003). The party seeking class certification bears the burden of producing sufficient evidence to establish that the requirements of class certification have been met and that class certification is, in fact, warranted. *Dukes*, 564 U.S. at 345. That party must establish that the elements of Rule 23 have been satisfied by a preponderance of the evidence. *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 296 (D. Md. 2022).

### a. Rule 23(a)(1): Numerosity

Under Rule 23(a)(1)'s numerosity requirement, one or more members of a class may sue as representatives of all members of the class only if the plaintiff shows that "the class is so numerous that joinder of all members is impracticable." FED R. CIV. P. 23(a)(1); *see Lienhart*, 255 F.3d at 146. "No specified number is needed" to satisfy the numerosity requirement. *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) (quoting *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d

6

648, 653 (4th Cir. 1967)) (internal quotations omitted). Rather, the impracticability of joinder is "considered in light of the particular circumstances of the case." *Id.* (quoting *Cypress*, 375 F.2d at 653) (internal quotations omitted). A class consisting of as few as twenty-five (25) members creates a presumption against the practicality of joinder. *Calderon v. GEICO Gen. Ins. Co.*, 279 F.R.D. 337, 346 (D. Md. 2012) (quoting *Cuthie v. Fleet Rsrv. Assoc.*, 743 F. Supp. 2d 486, 498 (D. Md. 2010)).

### b. Rule 23(a)(2): Commonality

A party seeking class certification must show that there are questions of law or fact common to the class. FED R. CIV. P. 23(a)(2). A single common question is sufficient to satisfy Rule 23(a)(2), if the answer to that question "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350, 359. The commonality analysis assesses whether there are sufficiently similar issues of fact or law shared between litigants such that resolution of those issues with respect to one litigant would drive the resolution of the litigation with respect to the others. *Id.* at 350. Furthermore, commonality requires the plaintiff to show that the class members suffered the same injury, caused by the same act. *Id.* at 349–50. With respect to the actions of a corporate defendant, the existence of a uniform corporate policy that causes the injury alleged by the plaintiff is typically sufficient to satisfy Rule 23(a)(2). *EQT Prod.*, 764 F.3d at 366.

### c. Rule 23(a)(3): Typicality

Under the typicality requirement of Rule 23(a)(3), the party seeking to certify the class must show that "the claims or defenses of the representative parties are typical of

7

the claims or defenses of the class." FED R. CIV. P. 23(a)(3); *see also Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006). The typicality, commonality, and adequacy analyses "tend to merge" because each requires the court to assess whether the representatives of the putative class have sufficiently similar claims such that class members' interests will be protected in their absence. *Brown v. Nucor Corp.*, 576 F.3d 149, 152 (4th Cir. 2009) (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998)) (internal quotations omitted). The typicality analysis necessitates a comparison between the representative members' claims and defenses and the non-representative members' claims and defenses. *Deiter*, 436 F.3d at 467. The parties' claims need not be perfectly aligned, but substantial variation in the claims that are central to the respective causes of action is fatal to typicality. *Id.* To establish typicality, the party seeking certification must show that the class representatives and the non-representative members have a shared interest "in prevailing on similar legal claims." *Cuthie*, 743 F. Supp. 2d at 499.

### d. Rule 23(a)(4): Adequacy

Rule 23(a)(4) requires the party seeking certification to show that "the representative parties will fairly and adequately protect the interests of the class." FED R. CIV. P. 23(a)(4). To satisfy the adequacy requirement, the "proposed class representatives must be members of the class they purport to represent and their interests must not be in conflict with those of the other class members." *Stacy v. Jennmar Corp. of Va., Inc.*, No. 1:21-cv-15, 2022 WL 1442247, at *6 (W.D. Va. May 6, 2022) (citing *Broussard*, 155 F.3d at 338–39). Additionally, the class representatives must be

represented by counsel that is "qualified, experienced and generally able to conduct the proposed litigation." *Id.* (quoting *Messer v. Bristol Compressors Int'l, LLC*, No. 1:18-cv-40, 2019 WL 2550328, at *4 (W.D. Va. June 20, 2019)) (internal quotations omitted); *see also Dukes*, 564 U.S. at 349, n.5 (stating that the adequacy analysis considers "concerns about the competency of class counsel and conflicts of interest").

### e. Ascertainability

To satisfy the final threshold requirement for class certification, the Court must be able to readily identify members of the class by reference to objective criteria. *Career Counseling*, 91 F.4th at 206. Under this ascertainability requirement, a court can only certify a class if it can identify members of the class "without extensive, individualized fact-finding." *Id.* (quoting *EQT Prod.*, 764 F.3d at 358).

### f. Rule 23(b)(3): Predominance and Superiority

If the Rule 23(a) requirements are satisfied, the party seeking class certification must also show that the case falls into one of the categories of Rule 23(b). FED R. CIV. P. 23(b); *EQT Prod.*, 764 F.3d at 357. Here, Plaintiffs allege that the case satisfies Rule 23(b)(3), which permits class certification if "questions of law or fact common to class members predominate over any questions affecting only individual members, and [] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED R. CIV. P. 23(b)(3); *see also Career Counseling*, 91 F.4th at 206. Thus, the party seeking certification must show both "predominance" and "superiority." *Career Counseling*, 91 F.4th at 206.

9

Like Rule 23(a)(2)'s commonality requirement, Rule 23(b)(3)'s predominance analysis focuses on the presence of common issues of law and fact among putative class members. *EQT Prod.*, 764 F.3d at 365. However, the predominance requirement "focuses not only on the existence of common questions, but also on how those questions relate to the controversy at the heart of the litigation," and thereby is more demanding than the commonality requirement. *Id.* at 366 (citation omitted). To satisfy the predominance requirement, the party seeking certification must show that common actions or practices by the defendant are more central to the class members' causes of action than uncommon actions or practices by the defendant. *Id.*

Rule 23(b)(3)'s superiority requirement ensures the efficiency of class action proceedings, and it requires courts to carefully assess whether a class action provides a more efficient method of adjudication than any alternative method of proceeding. *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010). The superiority analysis "necessarily depends greatly on the circumstances surrounding each case." *Id.* at 274 (citation omitted). Specifically, courts must consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

FED R. CIV. P. 23(b)(3)(A)–(D); *see Stillmock*, 385 F. App'x at 269. Courts should also consider the desirability of consistent results and finality of judgment. *Stillmock*, 385 F.

10

App'x at 275. The availability of possible alternative methods of adjudication does not defeat the superiority of a Rule 23 class action. *Id.* at 274–75.

### III. DISCUSSION

**A. Plaintiffs may seek certification under Rule 23.**

Defendants argue that it is inappropriate to certify a class in this case because VOWA's opt-in mechanism is substantive and conflicts with the Rule 23. (Resp. in Opp'n at 4–9, ECF No. 121.) Thus, Defendants assert that the opt-in mechanism controls and precludes certification of a class. (*Id.*)

"The Federal Rules of Civil Procedure generally govern all civil actions in federal court." *Pledger v. Lynch*, 5 F.4th 511, 518 (4th Cir. 2021). However, the Rules Enabling Act states that the federal rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Thus, when a state law potentially conflicts with the Federal Rules of Civil Procedure in a diversity case, the Supreme Court has established a two-step framework to determine which should apply. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 421 (2010) (Stevens, J., concurring). A court should "first determine whether the scope of the federal rule is sufficiently broad to control the issue before the court, thereby leaving no room for the operation of seemingly conflicting state law," i.e., a court should determine whether the federal rule and state law actually conflict. *Id.* (internal quotations and citations omitted).

If there is a conflict, a court must determine whether the state law is substantive or procedural. *Id.* at 422. If the state law is substantive, then it controls. *Id.* In determining whether the law is substantive or procedural, the Court should look to what the law

11

actually regulates, not its affect on the rights of the litigants. *Id.* at 407. "If it governs only 'the manner and the means' by which the litigants' rights are 'enforced,' it is valid; if it alters 'the rules of decision by which [the] court will adjudicate [those] rights,' it is not." *Id.* (quoting *Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438, 446 (1946)).

At the first step of the inquiry, the Court concludes that the federal rule and state law at issue conflict. Rule 23 categorically imposes an opt-out mechanism. *Id.* at 398. Conversely, VOWA incorporates the FLSA's opt-in provision, allowing employees to sue employers under VOWA by bringing "a collective action consistent with the collective action procedures of the [FLSA]." VA. CODE ANN. § 40.1-29(J). Thus, these two (2) sections are directly at odds.

However, VOWA's opt-in provision is procedural, not substantive. Regardless of whether a VOWA claim is brought as a class or a collective, the plaintiffs' substantive rights under the statute remain unchanged. *Glennon v. Anheuser-Busch, Inc.*, No. 4:21-cv-141, 2022 WL 18937383, at *4 (E.D. Va. Sept. 22, 2022) ("[T]he 'likelihood that some (even many) plaintiffs will be induced to sue by the availability of a class action is just the sort of "incidental effect" we have long held does not violate § 2072(b).'") (quoting *Shady Grove*, 559 U.S. at 408.) Plaintiffs are still able to sue either individually or jointly for violations of VOWA.

Defendants argue that this Court should not rely on *Glennon*, because the district court there did not give enough weight to the fact that VOWA's opt-in provision is an application of the FLSA's substantive opt-in provision. (Resp. in Opp'n at 7.) They also argue that *Glennon* inappropriately relied on *Roberts v. C.R. England, Inc.*, 321 F. Supp.

12

3d 1251, 1253 (D. Utah 2018). *Glennon* and *Roberts* are not the only courts that have determined that a state's adoption of the FLSA's opt-in provision is a procedural rule. *See Knepper v. Rite Aid Corp.*, 675 F.3d 249, 264 (3d Cir. 2012) (collecting cases); *Hatcher v. Cnty. of Hanover*, No. 3:23-cv-325, 2024 WL 3357839, at *3 (E.D. Va. July 10, 2024). As the Third Circuit explains, any rights that the FLSA's opt-in provision confers "extend only to actions under the FLSA and are not abridged or modified by the certification of a state-employment law class under Rule 23." *Knepper*, 675 F.3d at 264. This Court agrees and finds that allowing Rule 23 certification for VOWA actions does not abridge or modify Plaintiffs' rights.

In attempting to distinguish *Roberts*, Defendants assert that VOWA's legislative history demonstrates that the opt-in provision was intended to be part of the substantive rights conferred by VOWA. (Resp. in Opp'n at 8–9.) However, Defendants quote a legislative summary that does not address the opt-in procedure specifically and only states that VOWA was amended to create liability for violations of FLSA requirements. (*Id.*) As *Glennon* stated, though "Virginia has evinced a policy judgment that [VOWA] claims should be limited to the opt-in mechanism," the federal rules may still displace this policy judgment if it is procedural. 2022 WL 18937383, at *5. Here, Virginia's policy judgment is procedural and is eclipsed by Rule 23. Accordingly, Plaintiffs may seek Rule 23 certification for their VOWA claim.

## B. Plaintiffs Satisfy the Requirements of Rule 23(a)

Defendants do not challenge that Plaintiffs can meet the requirements of numerosity, adequacy, typicality, and ascertainability. The Court also finds that Plaintiffs

13

have satisfied these requirements. There are at least 227 putative class members, more than enough to satisfy the numerosity requirement. (Mem. in Supp. at 22.) Here, Plaintiff Brown's claims align with the overarching claims of the class. Further, Brown is a member of the class, does not have any conflicts, and her counsel is experienced and capable. Finally, the members of Plaintiffs' proposed class are readily ascertainable because they held specific positions with Defendants during the relevant period. Thus, the Court will address the remaining Rule 23(a) requirement: commonality.

Plaintiffs argue that the commonality requirement of Rule 23(a)(2) is satisfied because common questions of law and fact, namely whether NMM Is, NMM IIs, and NMM Seniors are exempt from overtime requirements, will be dispositive to each putative class member's claims. (Mem. in Supp. at 22–25.) Plaintiffs provide evidence to show that individuals bearing the title NMM I, NMM II, and NMM Senior perform largely the same tasks. (*See, e.g.*, NMM I Job Description, ECF No. 102-23; NMM II Job Description, ECF No. 102-24; NMM Senior Job Description, ECF No. 102-25; Defs.' Resp. to Pls.' Req. for Admis. Nos. 12–13; *see also, e.g.*, Robinson Dep. 19:9–19; Williams Dep. 26:8–14, 67:25–68:5; Dunn Dep. at 49:17–50:4, ECF No. 102-8; Mar. 18, 2024 Tr. at 90:7–14.) Additionally, while Anthem required most NMMs to have nursing licenses, the NMMs used skills they learned in training provided by Anthem, rather than during their nursing careers (Brown Dep. at 55:2–7; Mar. 18, 2024 Tr. at 95:15–96:5; Mem. in Supp. at 11). Based on these facts, Plaintiffs contend that there are common questions as to whether the class members' job duties, educational backgrounds, or licensures cause them to fall within VOWA's learned professional or administrative

14

exemptions. (Mem. in Supp. at 23–24.)  Because Defendants did not pay overtime to the class members, the question of whether the class members were improperly classified as exempt from VOWA's requirements and thereby entitled to overtime pay is dispositive to the success of the class members' VOWA claim. (*Id.* at 24.)

Defendants contend that Plaintiffs failed to provide sufficient evidence for the existence of common questions, primarily because Plaintiffs rely on depositions from individuals outside of the putative class. (Resp. in Opp'n at 11–12.)  Defendants contend that job requirements varied substantially between putative class members depending on their level of seniority and the type of medical service they reviewed. (Resp. in Opp'n at 12–16.)  Consequently, Defendants argue that whether an individual NMM was properly classified as exempt is an individualized question. (*Id.* at 13.)  Thus, no common question will drive the disposition of the VOWA claims. (*Id.*)

Here, the evidence, including numerous depositions, in-court testimony, and Defendants' undisputed job descriptions, shows that the tasks required of an NMM are common regardless of the service being reviewed, even if the specific criteria used during reviews varied.[3]  Further, contrary to Defendants' contention, the evidence shows that the job duties of NMM Is, NMM IIs, and NMM Seniors are largely the same.  One of the more persuasive pieces of evidence presented was Smith's testimony that, despite holding

---

[3] Defendants argue that five (5) of the eleven (11) depositions on which Plaintiffs base their argument should be discounted because the deponents are not members of the putative class. Defendants do not cite any case law to support the proposition that only putative class members' depositions can be used to establish facts necessary to certify a class. (Resp. in Opp'n at 11–12.) Accepting, *arguendo*, that Defendants are correct that Plaintiffs can only rely on the remaining six (6) depositions, the evidence is still sufficient to support Plaintiffs' assertions that NMM Is, IIs, and Seniors perform common tasks.

all three (3) NMM positions, her primary job duties remained the same. (Mar. 18, 2024 Tr. at 90:7–14.) Each position's primary task was to perform medical necessity reviews using the same methodologies, albeit varying criteria.

The question that will drive the resolution to the putative class members' VOWA claims is as follows: whether individuals who have the education, licensure, and job duties that Plaintiffs have attributed to NMMs fall within VOWA's learned professional or administrative exemptions. Because the answer to that question will be the same for any individual who worked as an NMM I, NMM II, or NMM Senior during the relevant period, the question is common to the putative class. Consequently, this common question is sufficient to satisfy Rule 23(a)(2) because the answer to the common question will drive the resolution of each putative class member's claim. Furthermore, Plaintiffs have shown that their injuries—not receiving overtime payments—were caused by the same act, namely Defendants' uniform corporate policy classifying class members as exempt. The proposed class therefore satisfies the commonality requirement.

### C. Plaintiffs Satisfy the Requirements of Rule 23(b)

Defendants assert that Plaintiffs cannot meet either the superiority or predominance requirements of Rule 23(b). (Resp. in Opp'n at 16–20.) Defendants first argue that a class action is not a superior method of adjudication because only twenty-six (26) class members are participating in the already conditionally certified FLSA collective action in this case. (*Id.* at 17–18.) Defendants' superiority argument somewhat blends together with their commonality argument, since they further assert that

Plaintiffs' claims would "require individualized inquiries into each RN's actual job duties." (*Id.* at 18.)

Conditional certification of an FLSA collective does not preclude the Court from certifying a class in the same case. *See Calderon*, 279 F.R.D. at 342. Here, there are approximately 227 putative class members. (Reply at 14.) Further, enough individuals opted into the collective here to justify class certification. Defendants cite to three (3) cases, all outside the Fourth Circuit, to support their argument that a class is not justified when only a few individuals opt to join the FLSA collective. (Resp. in Opp'n at 17.) Each is distinguishable. In the first, *Threet v. Dassault Falcon Jet Corp.*, No. 4:18-cv-445 BSM, 2019 WL 1422725 (E.D. Ark. Feb. 13, 2019), only fifteen (15) individuals joined the collective and the FLSA collective action was entirely separate from the state class action. *Id.* at *2. Likewise, in *Rasberry v. Columbia County*, No. 1:16-cv-1074, 2017 WL 3259447 (W.D. Ark. July 31, 2017), only five (5) individuals opted into the collective. *Id.* at *6. Here, thirty-four (34) individuals initially opted into the collective action and twenty-six (26) are actively participating. (Resp. in Opp'n at 17.) This is a significantly larger number than was present in either *Threet* or *Rasberry*.

Finally, Defendants cite *Muecke v. A-Reliable Auto Parts & Wreckers, Inc.*, No. 01 C 2361, 2002 WL 1359411, at *2 (N.D. Ill. June 21, 2002), for the proposition that a class should not be certified in the same case as a collective because it would not make sense to automatically include individuals that already opted not to join the collective. (Resp. in Opp'n at 17.) This directly conflicts with precedent in the Fourth Circuit stating that certifying a class and a collective in the same action is appropriate and

17

often more efficient. *See Calderon*, 279 F.R.D. at 342 ("[N]umerous decisions in this district court and other courts within the Fourth Circuit have determined that adjudication of FLSA claims and [Rule 23] state wage and hour claims are appropriate and unobjectionable.") (citation omitted); *McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 479 (E.D.N.C. 2010) (finding that Rule 23 certification was more efficient than individual actions in a suit that also involved an FLSA collective). Thus, since there are approximately 227 putative class members, the Court finds that a class action is a superior method of litigation.

Defendants next argue that common issues do not predominate because Defendants' exemption defenses will require individualized inquiries for each of the class members. (Resp. in Opp'n at 18–20.) This argument largely mirrors Defendants' argument on the lack of commonality. Defendants assert that, because the NMMs utilized different medical guidelines for their reviews, they each had different job duties. (*Id.* at 19–20.) They state that each guideline criterion must be reviewed to determine whether a nursing license was needed to interpret it and whether the NMMs used discretion. (*Id.* at 20.)

The common nature of Plaintiffs' claims is not reliant on the contents of each medical guideline. The guidelines necessarily vary because each addresses different medical procedures. However, the question of whether the NMMs exercised discretion is not premised on the differing criteria of each guideline; it is premised on whether the NMMs had discretion *when making decisions* based on the criteria. Because Defendants implemented common policies across all guidelines, the NMMs had the same decision-

18

making power, regardless of the applicable guideline. Thus, common issues predominate here.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs' Motion for Class Certification (ECF No. 101). An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Sept. 5, 2024
Richmond, Virginia